IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Auto Owners Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 4:10-cv-683-TLW |
| | ) | |
| Personal Touch Med Spa, LLC, | ) | |
| Inder Hora, Sapna Hora, Alexandria | ) | |
| Gardner, Dana Buffo, and Tracie | ) | |
| Carricker, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# ORDER

The plaintiff, Auto Owners Insurance Company ("plaintiff" or "Auto Owners"), brought this

civil action on March 17, 2010. (Doc. # 1). Auto Owners seeks a declaratory judgment that no

coverage exists under a "Businessowners" policy of insurance it issued to defendant Personal Touch

Med Spa, LLC ("Personal Touch") for claims asserted against Personal Touch in a state court action

underlying this coverage dispute. The state court action is currently pending in Horry County, South

Carolina under the name <u>Alexandria Gardner, Dana Buffo, and Tracie Carricker v. Personal Touch</u>

<u>Med Spa, L.L.C., Inder Hora, and Sapna Hora</u>, No. 2009-CP-26-11598. The plaintiffs in the

underlying state court action ("underlying lawsuit") are named as defendants in this

action—Alexandria Gardner ("Gardner"), Dana Buffo ("Buffo"), and Tracie Carricker ("Carricker").

Personal Touch and the remaining two defendants in this action, Inder Hora ("Inder") and Sapna

1

Hora ("Sapna"),[1] are named as defendants in the underlying lawsuit.  Inder is the owner of Personal Touch.

On August 16, 2010, Auto Owners filed a motion for summary judgment, arguing there is no possibility of coverage for the claims asserted against its insured in the underlying state court action.  (Doc. # 27).  Defendants Inder, Sapna, and Personal Touch filed a motion to dismiss on September 2, 2010, arguing that this Court should dismiss or, in the alternative, stay this action pending resolution of the underlying lawsuit.  (Doc. # 29).  On the same day, Inder, Sapna, and Personal Touch also filed a motion to stay Auto Owners' motion for summary judgment.  (Doc. # 31).  In addition, Inder, Sapna, and Personal Touch filed a response to Auto Owners' motion for summary judgment, (Doc. # 30), to which Auto Owners filed a reply.  (Doc. # 32).  Finally, Auto Owners also filed a response to the motion to dismiss filed by Inder, Sapna, and Personal Touch. (Doc. # 33).  A hearing was held before this Court on November 17, 2010 on the summary judgment motion (Doc. # 27), the motion to dismiss (Doc. # 29), and the motion to stay the motion for summary judgment (Doc. # 31).  (Entry # 36).  The Court has considered the applicable law, arguments of counsel, and memoranda submitted.  These motions are now ripe for disposition.

## FACTS

This declaratory judgment action arises out of a lawsuit in state court brought by Gardner, Buffo, and Carricker against Personal Touch, Inder, and Sapna.  Gardner, Buffo, and Carricker are former employees of Personal Touch.  Auto Owners asserts there is no coverage under the "businessowners" policy it issued to Personal Touch for the claims alleged in the state court

---

[1] The first names of Inder Hora and Sapna Hora are used for clarity because these parties have the same last name.

complaint.  Gardner, Buffo, and Carricker allege numerous causes of action in the state court action, including termination in violation of public policy because submission to sexual harassment and battery was made a condition of their employment with Personal Touch ("wrongful termination"), battery, defamation, and breach of contract.  In addition, Carricker alleges a cause of action for false imprisonment.

According to the allegations set forth in the state court complaint, about and subsequent to July 2008 Buffo and Gardner were employees of Personal Touch.  State Ct. Compl. ¶ 4.  Buffo was the manager, and Gardner was a patient coordinator.  Id.  Carricker, a salesperson, was hired in September 2008.  Id.  The complaint alleges that Inder, one week after taking over ownership of Personal Touch, was supervising Gardner and asked her to join him next door for a meal.  Id. ¶ 5. Inder then offered Gardner a raise and created and signed a new commission agreement.  Id.  After making these offers, "Inder said he would be like a friend or brother to her rather than an employer." Id. ¶ 6.  Subsequently, for a period of about thirty minutes, he allegedly began making inappropriate requests such as asking Gardner "to allow him to massage her or to see her stomach."  Id.  Gardner declined these requests, and Inder asked her not to tell his wife about what happened.  Id.

The following day Inder allegedly apologized and asked Gardner to keep what happened a secret.  Id. ¶ 7.  When asked if she had told her husband, Gardner responded affirmatively.  Id.  As the day progressed, Inder allegedly displayed his displeasure with Gardner by berating and yelling at her.  Id.  The complaint further states that "Gardner afterwards told Plaintiff Buffo about the incident" but does not specify when Gardner told Buffo about the incident or about what incident Buffo was told.  Id. ¶ 8.

The complaint sets forth that Inder allegedly continued to harass and express displeasure

toward Gardner because she wanted to limit their relationship to a professional one.  Id. ¶ 10.  The complaint further alleges that Inder's hostile and intimidating behavior forced Gardner to sign an agreement reducing her commission and other contractual rights.  Id.  Finally, on September 10, 2008, Gardner was in her office at Personal Touch when Inder allegedly entered the room, "grabbed a chart she was working on, and violently jerked it out of her hand."  Id. ¶ 11.  Next, he began berating her and, on a pretext, fired her.  Id.  According to the complaint, Gardner was never paid the commissions she was promised.  Id.

As for Buffo, the complaint alleges that about a week after Gardner told Buffo about the "incident,"[2] Inder took Buffo to a restaurant.  Id. ¶ 9.  While at the restaurant, Inder allegedly grabbed Buffo "roughly around her neck in a headlock, and began smacking her on her cheek, yelling insults at her and telling her she was fired."  Id.  The complaint further alleges that Inder failed to comply with Buffo's employment contract, including payment of her bonus.  Id.

With regard to Carricker, the complaint alleges that soon after hiring her Inder began touching her knees.  Id. ¶ 12.  Even though Carricker told Inder the touching was not welcomed, he continued to do so on a daily basis and would grab her arm to prevent her from leaving.  Id.  Inder also requested a meeting off premises, but Carricker refused.  Id.  Subsequently, Personal Touch, Inder, and Sapna held an event at the Crown Reef.  Id. ¶ 13.  At this event, Inder allegedly sought out Carricker, "got in her face, grabbed her by the arm and began yelling at her."  Id.  Inder forcefully held her by the arms when she tried to leave.  Id.  When she escaped, Inder said he did not want to see her again, and Carricker asked if she was fired.  Id.  Inder did not respond.  Id.  The following

---

[2] The "incident" to which the complaint is referring is apparently when Inder went next door for a meal with Gardner and allegedly made requests to massage her or see her stomach, but the complaint does not make this abundantly clear.

day Carricker came to work for a meeting with Mr. and Mrs. Hora, but before the meeting, Inder told her to leave and threateningly raised his hand to force her to leave.  Id.

## MOTION TO DISMISS

### A. Motion to Dismiss Standard

Defendants Personal Touch, Inder, and Sapna filed a motion to dismiss or, in the alternative, stay this declaratory judgment action pending resolution of the underlying lawsuit.  (Doc. # 29). "The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts 'may declare' the rights of interested parties." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998). Through this Act, "Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).  Therefore, consistent with Congress's intent, Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." Kapiloff, 155 F.3d at 493.  However, "[t]his discretion is not unbounded [because a district court may not refuse to entertain a declaratory judgment action out of 'whim or personal disinclination' but may do so only for 'good reason.'" Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112 (1962); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)).[3]

In determining whether to entertain a declaratory judgment action, district courts must

---

[3] The Fourth Circuit noted in Centennial Life Insurance Co. v. Poston that the Supreme Court's decision in Wilton v. Seven Falls Co. overruled Nautilus to the extent it suggested that a district court's decision over whether to entertain a declaratory judgment action should be reviewed under a standard other than abuse of discretion.  88 F.3d 255, 257-58 (4th Cir. 1996).

initially consider two factors outlined by the Fourth Circuit Court of Appeals in Aetna Casualty & Surety Co. v. Quarles: "(1) [whether] the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) [whether] it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas. & Sur. Co., 368 F.2d at 325. When a related proceeding is pending in state court, in addition to the Quarles factors, the decision of a district court over whether to exercise jurisdiction over a declaratory judgment action should also be governed by "considerations of federalism, efficiency, and comity." Penn-Am. Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004) (quoting Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996)). District courts are not without guidance, however, in weighing these considerations as the Fourth Circuit Court of Appeals has set forth four factors, known as the Nautilus factors, to aid district courts in deciding whether to exercise jurisdiction when there is a pending related state court action:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Kapiloff, 155 F.3d at 493-94 (quoting Nautilus, 15 F.3d at 377).

**B. Discussion**

After carefully weighing the applicable law and the arguments of the parties, at this time, this Court concludes that the Quarles factors weigh in favor of entertaining the declaratory judgment action. The relief sought by Auto Owners is not unusual since "[i]t is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory

6

judgment mechanism." Kapiloff, 155 F.3d at 494. Additionally, the action will serve a useful purpose in settling the disputed rights under the policy between Auto Owners and its insured. Finally, this action will provide relief by clarifying the uncertainty of whether coverage exists under the policy for the claims alleged against Personal Touch, Inder, and Sapna in the state court complaint.

Since there is a related state lawsuit, the Nautilus factors also must be taken into consideration. After carefully considering these factors, at this time, this Court finds that they weigh in favor of exercising jurisdiction as well. As for the first Nautilus factor, it does not appear that South Carolina has a strong interest in having the coverage issue involved in this case decided in its courts at this stage. At this time, there is no pending state court action dealing with the coverage question to which this Court may defer, and the coverage issue will not arise during the course of the underlying lawsuit against Personal Touch, Inder, and Sapna because Auto Owners is not a party to that lawsuit. See Penn-Am. Ins. Co., 368 F.3d at 414; Kapiloff, 155 F.3d at 494. Furthermore, while the parties agree that South Carolina law governs the coverage dispute before the Court, the issues involved at this stage appear to be standard ones of contract interpretation, meaning it is unlikely that the Court will be breaking new ground or deciding "novel issues of state interest." Kapiloff, 155 F.3d at 494; see also Nautilus, 15 F.3d at 378 (noting that a state's interest in deciding a controversy is lessened when the state law issues are not complicated or unsettled).

The second Nautilus factor also supports hearing the declaratory judgment action because at this stage it does not appear that the coverage issue before the Court could be decided more efficiently in state court. The efficiency factor involves determining "whether the questions in controversy . . . can better be settled in the proceeding pending in . . . state court" and "may entail

7

inquiry into the scope of the pending state court proceeding." <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 495 (1942). As stated previously, Auto Owners is not a party to the state court proceeding. Therefore, the question of whether Auto Owners has a duty to defend and indemnify will not be litigated in that proceeding based on the current status of the underlying lawsuit. This means that a separate action would need to be brought in state court. At this time, this Court does not conclude such an action could be resolved more efficiently if brought in state court as opposed to federal court. Consequently, dismissing this coverage action "would not seem to advance any cause of efficiency." <u>Penn-Am. Ins. Co.</u>, 368 F.3d at 414.

With regard to the third <u>Nautilus</u> factor, exercising jurisdiction over this declaratory judgment action, at this time, does not seem to create a real risk of unnecessary entanglement between state and federal court. The situation here is arguably analogous to <u>Penn-America Insurance Co. v. Coffey</u> where the Fourth Circuit concluded a declaratory judgment action brought by a liability insurer against its insured was proper in federal court. In <u>Penn-America</u>, the insured was a sports bar whose employees were involved in a violent altercation with some unruly patrons. <u>Penn-Am. Ins. Co.</u>, 368 F.3d at 411. The Fourth Circuit reasoned there was little risk of entanglement because in determining whether there was a duty to defend, the district court would only need to compare the allegations in the state court action with the language in the insurance policy. <u>Id.</u> at 413. The court based this reasoning on the principle that while the duty to indemnify depends on the actual resolution of facts alleged in the state court complaint, the duty to defend under Virginia law is determined based on the allegations in the complaint. <u>Id.</u>

Likewise, under South Carolina law, "[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations

8

of the [underlying] complaint." <u>City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund</u>, 382 S.C. 535, 543, 677 S.E.2d 574, 578 (2009) (citing <u>C.D. Walters Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.</u>, 281 S.C. 593, 594, 316 S.E.2d 709, 710 (Ct. App. 1984)).  The question this Court is being asked to decide is arguably different than the issue presently being litigated in state court.  This Court is not being asked to decide whether Personal Touch, Inder, and Sapna are actually liable for the actions alleged in the state court complaint.  Rather this Court is being asked to decide whether the facts and circumstances alleged in that complaint create the possibility of coverage under the Auto Owners policy.  Therefore, the risk of entanglement is not sufficient at this time to prohibit ruling on the current issues before this Court.

Finally, with respect to the fourth <u>Nautilus</u> factor, this Court does not conclude that Auto Owners was engaging in procedural fencing when it brought this action.

In sum, after weighing both the <u>Quarles</u> and the <u>Nautilus</u> factors, this Court concludes it is appropriate for the Court to exercise jurisdiction over this declaratory judgment action at this time.  As a result, the motion to dismiss by Personal Touch, Inder, and Sapna (Doc. # 29) is **DENIED**.

## **MOTION FOR SUMMARY JUDGMENT**

### **A. Summary Judgment Standard**

Having decided to exercise its jurisdiction, this Court is now prepared to issue a ruling on Auto Owners' motion for summary judgment.  (Doc. # 27).  Pursuant to Federal Rule of Civil Procedure 56(a), the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  As the party seeking summary judgment, the plaintiff bears the initial responsibility of informing this Court of the basis for its motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This requires that the plaintiff identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine dispute of material fact.  Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the plaintiff bears this initial responsibility, the defendants, as the nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial."  Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 324; Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-61 (1970).  In satisfying this burden, the defendants must offer more than a mere "scintilla of evidence" that a genuine dispute of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the defendants must produce evidence on which a jury could reasonably find in their favor.  See Matsushita, 475 U.S. at 587.

In considering the plaintiff's motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the defendants as the nonmoving party.  See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990).  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial."  Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

**B. Discussion**

Auto Owners seeks a declaration that no coverage exists under the "businessowners" insurance policy it issued to Personal Touch for the claims brought against Personal Touch, Inder,

and Sapna in state court and that because no coverage exists under the policy, it has no obligation to defend the claims. Under South Carolina law, the questions of whether there is coverage under a liability policy and whether a liability insurer has a duty "to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint." City of Hartsville, 382 S.C. at 543, 677 S.E.2d at 578 (citing C.D. Walters Constr., 281 S.C. at 594, 316 S.E.2d at 710). "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." Id. (citing Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co., 274 S.C. 468, 470-71, 265 S.E.2d 38, 40 (1980)). Moreover, "the inclusion of some non-covered claims [in the underlying complaint] does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy." Isle of Palms Pest Control Co. v. Monticello Ins. Co., 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct. App. 1994); see also Town of Duncan v. State Budget & Control Bd., Div. of Ins. Serv., 326 S.C. 6, 16, 482 S.E.2d 768, 773-74 (1997)). Conversely, "an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." B.L.G. Enter., Inc. v. First Fin. Ins. Co., 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999) (citing Federated Mut. Ins. Co. v. Piedmont Petroleum Corp., 314 S.C. 393, 396, 444 S.E.2d 532, 533 (Ct. App. 1994); Falkosky v. Allstate Ins. Co., 311 S.C. 369, 371-72, 429 S.E.2d 194, 196 (Ct. App. 1993)). While the allegations in the underlying complaint are key to a court's analysis, the determination of the existence of a duty to defend is "not strictly controlled by [those] allegations" but "may also be determined by facts outside of the complaint that are known by the insurer." USAA Prop. and Cas. Ins. Co. v. Clegg, 377 S.C. 643, 657, 661 S.E.2d 791, 798 (2008).

Auto Owners provided sparse documents in support of its motion for summary judgment. In addition, the parties provided no affidavits. At the hearing, the parties also stated that no

depositions had been taken in this case. Therefore, this Court's resolution of Auto Owners' motion is based virtually on comparing the policy with the underlying complaint.

When interpreting an insurance policy, courts are guided by general rules of contract construction. B.L.G. Enter., 334 S.C. at 535, 514 S.E.2d at 330. "[I]n cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." Garrett v. Pilot Life Ins. Co., 241 S.C. 299, 304, 128 S.E.2d 171, 174 (1962). However, when there are ambiguous or conflicting terms in a policy, those terms "must be construed liberally in favor of the insured and strictly against the insurer." Diamond State Ins. Co. v. Homestead Indus., Inc., 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995). Furthermore, "[i]f the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." Id.

### 1. Alexandria Gardner

Auto Owners asserts that Gardner's claims are barred because her claims fall outside the policy period. The Auto Owners insurance policy issued to Personal Touch has effective dates providing coverage from December 7, 2008 until December 7, 2009. The state court complaint states that Gardner was fired on September 10, 2008. State Ct. Compl. ¶ 11. According to the policy, it applies only "to 'bodily injury' . . . that occurs during the policy period." Likewise, the policy states it only applies to "'personal injury' caused by an offense committed . . . during the policy period." Finally, the Employment Practices Liability Insurance Coverage Endorsement to the policy also states that it applies only to a "wrongful employment act" that commences or takes place during the Endorsement's coverage period, which is the same as the period for the rest of the policy.

12

In light of the fact that Gardner's employment was terminated almost three months before the Auto Owners policy became effective, the attorneys for Personal Touch, Inder, and Sapna conceded at the hearing that no coverage exists for Gardner's claims. Since the attorneys for Personal Touch, Inder, and Sapna have conceded this point, this Court now holds that the claims Gardner asserts in the underlying lawsuit are not covered under the policy.[4] Auto Owners' motion for summary judgment with respect to Gardner's claims in the underlying lawsuit is therefore **GRANTED**.

### 2. Dana Buffo and Tracie Carricker

#### a. Auto Owners' Arguments Relating to the Policy's Effective Dates

Buffo asserts causes of action in the underlying lawsuit for wrongful termination, battery, defamation, and breach of contract. Auto Owners asserts that all of these claims fall outside the policy period based on a time line that is pieced together from the state court complaint. The complaint states that "about a week" after Gardner told Buffo about an "incident" that occurred between Gardner and Inder, Buffo went to a restaurant with Inder, who proceeded to grab her around the neck, smack her on the cheek, and tell her she was fired. State Ct. Compl. ¶ 9. Based on these allegations, Auto Owners argues that the latest Gardner could have told Buffo about the "incident" was the date Gardner was fired—September 10, 2008. In turn, this would mean that the latest Inder could have committed the alleged wrongful acts against Buffo, including the wrongful termination, is about a week after September 10 or essentially sometime during the month of September.

This Court does not find Auto Owners' analysis sufficiently persuasive. In determining if a duty to defend exists, this Court is charged with deciding whether the underlying complaint creates

---

[4] The attorney for Gardner, Buffo, and Carricker did not appear at the hearing or file a response to Auto Owners' motion for summary judgment.

any possibility of coverage. The underlying complaint does not specify when Gardner told Buffo about the "incident." Auto Owners asks the Court to infer that Buffo was told about the "incident" during Gardner's employment with Personal Touch. The Court simply will not reach an inference as to factual allegations unless no other inference is plausible. It is also possible that Gardner told Buffo about the "incident" after Gardner's employment ended. If the facts show this to be the case, this would mean that Buffo's conversation with Gardner may have occurred after the Auto Owners policy became effective, thus placing Inder's wrongful acts against Buffo within the policy period. The factual allegations of the complaint are simply insufficient to reach a conclusion favorable to Auto Owners. Furthermore, the underlying complaint does not indicate when the alleged defamation of Buffo occurred. Thus, there is no basis to reach a conclusion that the defamation occurred outside the policy's effective dates.

### b. Auto Owners' Arguments Relating to Whether an Insured Knew or Should Have Known Carricker's Bodily Injuries Occurred Before the Policy Became Effective

The Auto Owners policy provides that it applies to "bodily injury" only if "prior to the policy period, no insured . . . knew or should have known that the 'bodily injury' . . . had occurred . . . ." If an insured knew or should have known, prior to the policy period, that the "bodily injury" occurred, "any continuation, change or resumption of such 'bodily injury' . . . during or after the policy period will be deemed to have been known prior to the policy period." Auto Owners argues that Personal Touch knew about Inder's sexual harassment of Carricker before the policy became effective on December 7, 2008. Its position is based on a "note" from a Personal Touch manager dated approximately November 1, indicating someone named "Tracey" alleged that Inder sexually harassed her. (Doc. # 27, Attach. 9).

14

However, this position is based on a paucity of evidence. In addition to the note not specifying "Tracey's" last name, it is also not clear what the note means by "sexually harassed." Even assuming that "Tracey" is Tracie Carricker and that "sexually harassed" means the alleged battery and false imprisonment, the underlying complaint suggests that Inder's inappropriate conduct toward Carricker was ongoing, meaning some of the conduct may have occurred after this November 1 note and after December 7. For example, the complaint states Inder touched Carricker's knees and "continued to do so on a daily basis." State Ct. Compl. ¶ 12. Most notably, the complaint also asserts that Inder battered and falsely imprisoned Carricker during an event at the "Crown Reef." Id. ¶ 13. The complaint then alleges that the day following this event Carricker went to work for a meeting with Inder and his wife, but Inder told her to leave and threateningly raised his hand toward her, making her fearful of returning. Id. ¶ 14. This may be the date Carricker's employment ended, but the exact date is not clearly set forth in the complaint. Auto Owners asserts that Carricker's employment ended on December 10, 2008. Auto Owners' Mem. in Supp. of its Mot. for Summ. J. 18 (Doc. # 27). This date seems plausible based on a series of letters attached to Auto Owners' motion for summary judgment. The first letter, dated December 11, 2008, is from an attorney who states he is representing Carricker and is addressed to Inder. Letter from Robert W. Rushing, Jr. to Inder Hora (Dec. 11, 2008) (Doc. # 27, Attach. 7). The letter states that Carricker does not feel safe returning to work, that she is prepared to return if Inder will treat her appropriately, and that she wishes to know whether she has been discharged. Id. The second letter is a response from an attorney representing Personal Touch and states there is no need for Carricker to return to work at Personal Touch because she has indicated previously that she will not accept a part time position. Letter from Mark A. Nappier to Robert W. Rushing, Jr. (Dec. 15, 2008) (Doc. # 27, Attach. 8).

15

Thus, assuming that Carricker was discharged on approximately December 10 and given that the complaint alleges Inder battered and falsely imprisoned Carricker during an event at the Crown Reef shortly before Carricker was discharged, there is a possibility that some of the incidents of battery and false imprisonment may have occurred between December 7, the effective date of the policy, and December 10, the approximate discharge date for Carricker.  Moreover, there is no indication that, before December 7, an insured knew about the alleged battery and false imprisonment that occurred at the Crown Reef.  There are simply too many factual allegations omitted in the underlying complaint to rule in favor of Auto Owners.  Therefore, this Court does not find in favor of Auto Owners based on its argument that an insured knew or should have known about Carricker's bodily injuries.[5]

### c. Auto Owners' Arguments Relating to the Exclusion for Bodily Injury that Is Expected or Intended from the Standpoint of the Insured

The policy Auto Owners issued to Personal Touch includes a number of exclusions.  Auto Owners argues that some of these exclusions apply to the claims asserted in the underlying lawsuit.  One of the exclusions advanced by Auto Owners states there is no coverage for "'bodily injury' . . . expected or intended from the standpoint of the insured."  Under South Carolina law, "[i]nsurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability."  Owners Ins. Co. v. Clayton, 364

---

[5] Auto Owners also argues that the bodily injury and personal injury claims asserted by Carricker fall outside the policy's effective dates.  However, the Court denies relief to Auto Owners based on this argument for the same reasons it denies relief based on Auto Owners' argument that an insured knew or should have known prior to the policy's inception date about the injuries sustained by Carricker.  More specifically, the underlying complaint arguably suggests that the incidents of battery and false imprisonment were ongoing and that some of them occurred at the Crown Reef shortly before her employment ended.  Also the complaint suggests a possibility that her alleged wrongful termination from employment occurred after the policy became effective.  Finally, the complaint is not specific about when the defamation occurred.

S.C. 555, 560, 614 S.E.2d 611, 614 (2005) (citing Boggs v. Aetna Cas. & Sur. Co., 272 S.C. 460, 464, 252 S.E.2d 565, 568 (1979)). Auto Owners asserts that battery and false imprisonment are both common law intentional torts for which intent must be found in order for Personal Touch, Inder, and Sapna to be liable for them. Consequently, Auto Owners argues that coverage for any bodily injury that occurred as a result of the battery and false imprisonment claims is excluded because the bodily injury was expected or intended from the insured's standpoint.

Battery and false imprisonment are considered intentional torts, and a perpetrator of these torts often intends to cause bodily injury. However, a person can arguably be liable for these torts without having intended to cause bodily injury. See Mellen v. Lane, 377 S.C. 261, 277, 659 S.E.2d 236, 244 (Ct. App. 2008) (quoting Smith v. Smith, 194 S.C. 247, 259, 9 S.E.2d 584, 589 (1940)); Law v. S.C. Dep't of Corr., 368 S.C. 424, 440, 629 S.E.2d 642, 651 (2006). In the case of a battery, a person arguably could be found liable for touching someone with the intent of bringing about an offensive contact as opposed to bodily injury. See Mellen, 377 S.C. at 277, 659 S.E.2d at 244 (quoting Smith, 194 S.C. at 259, 9 S.E.2d at 589). Under South Carolina law, intentional acts exclusions are interpreted narrowly against excluding coverage. See, e.g., Miller v. Fidelity-Phoenix Ins. Co., 268 S.C. 72, 75, 231 S.E.2d 701, 702 (1977) (holding that when interpreting an intentional acts exclusion, "the better rule is to the effect that not only the act causing the loss must have been intentional but that the results of the act must also have been intended"). For example, in this case, the manner in which Inder allegedly touched Carricker's knees may constitute a battery that was committed with the intent to bring about bodily injury or to commit an offensive touching. At this stage of the proceedings and based on the extremely limited evidence presented by the parties, this Court cannot determine what Inder expected or intended each time he allegedly committed the acts

17

of battery and false imprisonment alleged in the underlying complaint. There is simply not sufficient evidence or allegations to determine if this exclusion applies. This Court also denies relief to Auto Owners, at this stage of the proceedings, on the basis of the exclusion for bodily injury expected or intended from the insured's standpoint because even if the exclusion applied, coverage may still exist under the policy to the extent that Carricker's injuries as a result of the alleged false imprisonment fall under the category of "personal injury" as opposed to "bodily injury," as those terms are defined in the policy.[6]

### d. Auto Owners' Arguments Relating to the Employer's Liability Exclusion and Employment Related Practices Exclusion

Another exclusion Auto Owners asserts as precluding coverage provides there is no coverage for "'bodily injury' to an employee of the insured arising out of and in the course of employment by the insured." This is commonly referred to as the "Employer's Liability Exclusion." See 9A Steven Plitt et al., Couch on Insurance §129.11 (3d ed.). Auto Owners asserts that any damages related to "bodily injury" that occurred as a result of the claims for wrongful termination, defamation, and battery alleged by Buffo and Carricker in the underlying complaint are excluded because any such "bodily injury" arose out of and in the course of their employment by the insured.

Similar in nature to the Employer's Liability Exclusion is the Employment Related Practices Exclusion, which provides that "bodily injury" and "personal injury" are excluded when "arising out of any . . . termination of employment; . . . defamation, harassment, humiliation, discrimination or

---

[6] The Auto Owners policy differentiates between "bodily injury" and "personal injury" when outlining the coverages it provides. Under the policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy defines "personal injury" as "injury, other than bodily injury, arising out of one or more of the following offenses," and then lists a number of offenses. The only two offenses relevant to this case are "false arrest, detention or imprisonment" and "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

other employment-related practices, policies, acts or omissions . . . ."  Auto Owners argues that the causes of action for battery, false imprisonment, defamation, and wrongful termination fall within this exclusion and thus there is no coverage for the bodily and personal injuries suffered as a result of these wrongful acts.

Key to both the Employer's Liability Exclusion and the Employment Related Practices Exclusion is the term "arising out of."  South Carolina courts have concluded that "the term 'arising out of' when used in an insurance policy exclusion should be narrowly construed to mean 'caused by.'" Owners Ins., 364 S.C. at 561, 614 S.E.2d at 614 (citing McPherson v. Michigan Mut. Ins. Co., 310 S.C. 316, 320, 426 S.E.2d 770, 771 (1993)).  This interpretation contrasts with a broader connotation, applied by some courts, under which the term means "causal relation to, incident to, flowing from, or having connection with."  McPherson, 310 S.C. at 319, 426 S.E.2d at 771.  Also key to the Employer's Liability Exclusion is the phrase "in the course of employment."  There is little South Carolina case law dealing with this phrase in the context of an insurance policy.  In one case, the South Carolina Supreme Court concluded it was reasonable to interpret the phrase in the manner in which it is interpreted in the master/servant liability and worker's compensation contexts.  See S.C. State Budget & Control Bd., Div. of Gen. Serv., Ins. Reserve Fund v. Prince, 304 S.C. 241, 245-46, 403 S.E.2d 643, 646 (1991).  In determining whether a person is acting within the scope of employment in the master/servant liability and worker's compensation contexts, courts in South Carolina generally ask whether a "'servant is doing some act in furtherance of the master's business'" even if it is outside the scope of the servant's authority.  Id. at 246, 403 S.E.2d at 646 (quoting Crittenden v. Thompson-Walker Co., 288 S.C. 112, 115-16, 341 S.E.2d 385, 387 (Ct. App. 1986)).

In light of the narrow manner in which South Carolina courts interpret the term "arising out of" and the manner in which they interpret the phrase "in the course of employment," this Court concludes it is not clear at this stage of the litigation whether coverage for the battery and false imprisonment described in the underlying complaint is excluded.  The factual allegations of the complaint and limited evidence provided by the parties are simply insufficient for this Court to find that the alleged conduct arose out of and in the course of Buffo's and Carricker's employment.  Therefore, this Court denies relief to Auto Owners on the basis of its argument that coverage for the battery and false imprisonment claims is excluded under the Employer's Liability Exclusion.

For similar reasons, this Court finds that the allegations in the underlying complaint and limited evidence provided are not sufficient at this stage of the case to conclude that coverage for the battery and false imprisonment claims alleged by Buffo and Carricker is excluded under the Employment Related Practices Exclusion.[7]  The factual allegations and limited evidence are simply not enough for this Court to reach a finding that the incidents of battery and false imprisonment alleged in the complaint are employment-related practices.

Finally, this Court finds no basis to grant relief to Auto Owners based solely on its arguments that the Employer's Liability Exclusion and Employment Related Practices Exclusion preclude coverage for injuries suffered as a result of the alleged wrongful termination and defamation because these exclusions arguably conflict with the Employment Practices Liability Insurance Coverage Endorsement.

---

[7] The Employer's Liability Exclusion would only exclude coverage for the bodily injuries Carricker sustained as a result of the alleged false imprisonment.  However, if the Employment Related Practices Exclusion applied, coverage would be excluded for bodily *and* personal injuries sustained due to the false imprisonment.  This distinction is not significant here because the Court holds that neither exclusion applies based on the current record.

### e. Auto Owners' Arguments Relating to the Employment Practices Liability Insurance Coverage Endorsement

The Employment Practices Liability Insurance Coverage Endorsement states that the insurer "shall pay those 'losses' arising out of your 'wrongful employment act' against your 'employees' . . . ." The Endorsement includes a number of acts which constitute "wrongful employment acts." Based on the briefs submitted by the parties, the only relevant "wrongful employment acts" are "wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract; harassment (including sexual harassment, whether quid pro quo, hostile work environment or otherwise); [and] . . . employment-related . . . libel, slander or defamation." The Endorsement also contains a number of exclusions, including one for "any liability arising out of 'bodily injury.'" However, "this exclusion does not apply to any 'claim' for emotional distress arising out of 'wrongful employment acts.'" The definition for "bodily injury" under the Endorsement is essentially the same as the definition in the rest of the policy.

By its own terms, this Endorsement arguably conflicts with the Employment Related Practices Exclusion.[8] The Employment Related Practices Exclusion excludes coverage for "bodily injury" *and* "personal injury" which arise "out of any . . . termination of employment; . . . defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions . . . ." Meanwhile, the Employment Practices Liability Insurance Coverage Endorsement states it covers losses arising out of any actual or alleged wrongful dismissal, discharge, or termination; harassment (including sexual harassment); and employment-related

---

[8] The main body of the policy actually includes "oral or written publication of material that slanders or libels a person" among the personal injuries for which it provides coverage. Both the Employment Related Practices Exclusion and the Employment Practices Liability Insurance Coverage Endorsement constitute endorsements to the policy.

21

defamation.  Consequently, because there are conflicting terms in the policy, this Court "must . . . construe[] [those terms] liberally in favor of the insured and strictly against the insurer."  Diamond State Ins., 318 S.C. at 236, 456 S.E.2d at 915.

Accordingly, this Court does not find based on the record before it that the Employment Related Practices Exclusion precludes coverage for the injuries Buffo and Carricker sustained as a result of the alleged defamation.  South Carolina courts narrowly interpret the term "arising out of" in an insurance policy exclusion to mean "caused by."  Owners Ins., 364 S.C. at 561, 614 S.E.2d at 614 (citing McPherson, 310 S.C. at 320, 426 S.E.2d at 771).  In the defamation context, the South Carolina Supreme Court has applied the term "arising out of" in an Employment Related Practices Exclusion in a manner that differentiates between statements gratuitously made about the circumstances surrounding an employee's termination and statements made under other circumstances, including statements made to potential employers inquiring about a former employee's performance.  Id. at 562, 614 S.E.2d at 615.  The court held that injuries suffered as a result of a statement made gratuitously did not fall under the exclusion while injuries sustained as a result of a statement made in response to a potential employer's inquiry could potentially fall under the exclusion.  Id.  In this case, the underlying complaint is neither clear about the content of the defamatory statements allegedly made nor is it clear about the context in which these statements were made.  The complaint simply states that Personal Touch, Inder, and Sapna published "to third parties of and concerning the plaintiffs statements that were meant to be and were understood as meaning that the plaintiffs were unprofessional and unqualified to perform their professions and that further they were sexually immoral."  State Ct. Compl. ¶ 31.  Thus, it is uncertain at this stage of the case whether the Employment Related Practices Exclusion precludes coverage for the defamation

claims because the underlying complaint does not clearly indicate if the defamatory statements were made gratuitously or in a context in which the statements would be considered an employment-related practice.  There are simply not enough clear facts at this time for this Court to say whether the defamation that occurred is an employment-related practice.  In addition, if ultimately the defamatory statements turn out to be employment-related, with the exception of liability arising out of bodily injury, the Employment Practices Liability Insurance Coverage Endorsement may provide coverage for any losses caused by the statements, including losses due to emotional distress.  Therefore, this Court does not conclude that the Employment Related Practices Exclusion excludes coverage for the injuries suffered as a result of the alleged defamation based on the record before it.[9]

As for the claims asserted by Buffo and Carricker that their termination from employment violated public policy, this cause of action would arguably fall under the Employment Related Practices Exclusion because it arises out of an employment-related act—a termination of employment.  However, because of the Employment Practices Liability Insurance Coverage Endorsement, with the exception of any liability arising out of bodily injury, coverage may exist under the policy for losses sustained by the insured as a result of the wrongful termination, including losses due to emotional distress.  At this stage of the litigation, when it is not clear whether Personal Touch, Inder, and Sapna are liable for wrongful termination, it is not possible for this Court to determine to what extent any such potential liability arises out of bodily injury.  Therefore, this Court

---

[9] For these same reasons, this Court also denies relief to Auto Owners based on its argument that the Employer's Liability Exclusion applies to the defamation claims.  At this stage of the litigation, the allegations do not provide enough information about the content and context of the defamatory statements for this Court to say that they were caused by and in the course of Buffo's and Carricker's employment.  In addition, if the statements are ultimately shown to have arisen out of and in the course of their employment, the Employer's Liability Exclusion would only exclude coverage for "bodily injury" sustained as a result of the defamations.  Further, with the exception of liability arising out of "bodily injury," the Employment Practices Liability Insurance Coverage Endorsement may provide coverage for the losses caused by the defamations, including losses due to emotional distress.

does not relieve Auto Owners of its duty to defend Buffo's and Carricker's wrongful termination claims.[10]

### f. Auto Owners' Arguments Relating to the Breach of Contract Claims

The underlying complaint alleges that Personal Touch, Inder, and Sapna are liable for breach of contract because Buffo and Carricker were not paid the commissions they were promised pursuant to contracts with Personal Touch, Inder, and Sapna.  It also states that Personal Touch, Inder, and Sapna are liable for breach of contract because they terminated Buffo and Carricker "in violation[] of the policies and laws of South Carolina."  Auto Owners asserts that coverage for these claims is excluded under a provision in the Employment Practices Liability Insurance Coverage Endorsement, which states the insurance does not apply to "[a]ny liability arising out of any actual or alleged contractual liability of any insured under any *express* contract or agreement."  (emphasis added).

However, this Court denies relief to Auto Owners on the basis of this exclusion.  First, the Employment Practices Liability Insurance Coverage Endorsement states that its provisions "apply only to this endorsement."  Consequently, the contractual liability exclusion on which Auto Owners bases its argument apparently only applies to the Employment Practices Liability Insurance Coverage Endorsement and not to the entire policy.  Second, to the extent the allegations in the underlying complaint suggest that Personal Touch, Inder, and Sapna breached some implied employment

---

[10] The Employment Practices Liability Insurance Coverage Endorsement excludes from its coverage wrongful employment acts that occur outside the Endorsement's effective dates and "liability arising out of incidents, circumstances or 'wrongful employment acts,' which an insured, prior to the [Endorsement's effective date], had knowledge or which an insured could have reasonably foreseen might result in a 'claim' or 'suit.'" At this stage of the litigation, this Court denies relief to Auto Owners based on either of these exclusions.  The underlying complaint does not state when Personal Touch terminated Buffo's or Carricker's employment.  In addition, none of the parties have produced evidence establishing when Buffo's and Carricker's employment ended, although there is evidence to suggest that Carricker's employment was terminated around December 10, 2008.  There is also no clear evidence in the underlying complaint or in any documents submitted by the parties indicating when the alleged defamation occurred.

contract when they terminated Buffo and Carricker in violation of the policies and laws of South Carolina, coverage may exist under the Employment Practices Liability Insurance Coverage Endorsement.  Included among the "wrongful employment acts" that the Endorsement covers is "wrongful dismissal, discharge or termination . . . , including breach of an implied contract." Accordingly, Auto Owners has not sufficiently shown at this stage of the litigation that coverage for Buffo's and Carricker's breach of contract claims is excluded under the policy.

## CONCLUSION

In conclusion, the factual allegations of the underlying complaint and the submitted evidence simply do not sufficiently establish what occurred and when it occurred.  For the reasons set forth herein, the motion to dismiss filed by Personal Touch, Inder, and Sapna (Doc. # 29) is **DENIED**. Pursuant to the concession Personal Touch, Inder, and Sapna made at the hearing, this Court **GRANTS** Auto Owners' motion for summary judgment (Doc. # 27) with respect to Gardner's claims and holds that the Auto Owners policy provides no coverage for the claims alleged by Gardner in the underlying state court complaint.  The remainder of the summary judgment motion (Doc. # 27) is **DENIED**.  Finally, the motion to stay Auto Owners' motion for summary judgment (Doc. # 31) is **DENIED** because it is now moot.

**IT IS SO ORDERED**.

s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

January 14, 2011

Florence, South Carolina

25